**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

ARTURO BURGUENO

    Plaintiff,

v.

ALTERRA MOUNTAIN COMPANY U.S. INC., INTRAWEST/WINTERPARK OPERATIONS CORPORATION, and EMILY FRAME,

    Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

COMES NOW, Plaintiff, Arturo Burgueno ("Plaintiff"), by and through his attorneys, Bloch & Chapleau, Cates, Ongert, LLC, and submits this Complaint and Jury Demand against Alterra Mountain Company U.S. Inc. ("Alterra Mountain Company"), Intrawest/Winterpark Operations Corporation ("Intrawest") and Emily Frame ("Frame") and in support thereof now states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Arturo Burgueno, is an individual, resident and domiciliary of the County of Bexar, State of Texas.

2. Defendant Alterra Mountain Company is a corporation, incorporated in the State of Delaware, with its principal office located in the City and County of Denver, State of Colorado.

3. Defendant Intrawest is a corporation, incorporated in the State of Delaware, with its principal office located in the County of Grand, State of Colorado.

4. Upon information and belief, Defendant Frame is an individual, resident, and domiciliary of the County of Grand, State of Colorado.

5. The U.S. District Court for the District of Colorado has jurisdiction of this civil action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

6. The U.S. District Court for the District of Colorado is the proper venue pursuant to 28 U.S.C. § 1391 because it is the judicial district in which the events giving rise to the claim occurred. Further, according to Defendants, Plaintiff's ski pass contains language indicating the "EXCLUSIVE JURISDICTION" in the United States shall be in the **local State Court or Federal Court residing where an alleged incident occurred…**" (emphasis in original).

## FACTUAL ALLEGATIONS

7. This is an action to recover damages suffered by Plaintiff as a result of a catastrophic fall from a ski lift caused by Defendants that occurred on March 17, 2023, at the Winter Park Ski Area ("Winter Park").

8. Upon information and belief, Defendant Alterra Mountain Company owns the Winter Park Ski Area.

9. Upon information and belief, Defendant Intrawest owns and operates the Explorer Express chairlift.

10. On March 17, 2023, Plaintiff was loading the "Explorer Express" chairlift at the Winter Park Ski Area.

11. Plaintiff is a very experienced adaptive skier who utilizes a "sit-ski."

12. It is common, and Defendants expect, adaptive skiers to utilize the Explorer Express lift.

13. Winter Park Ski Area prides itself on its adaptive skiing program as being one of the best in North America.

14. Winter Park's website states that it is "committed to preserving a welcoming place where people of all shapes, sizes, colors, mindsets and orientations can venture out into the great outdoors."

15. Winter Park's website further states that it "is proud to donate more than $1.2 million dollars and products and services each year to the NSCD [National Sports Center for the Disabled]," which is based at the Winter Park Ski Area.

16. Defendant Frame is an employee of Defendant Intrawest and was acting within the scope of her employment with Defendant Intrawest at all pertinent times on March 17, 2023.

17. Defendant Frame was a lift operator working at the loading area of the Explorer Express lift on March 17, 2023.

18. Friday, March 17, 2023 was St. Partrick's day and therefore was a busy day at Winter Park with long lift lines.

19. At the time Plaintiff was loading onto the Explorer Express lift on March 17, 2023, Defendant Frame was the only employee present operating the loading area of the Explorer Express lift.

20. Defendant Frame instructed and placed Plaintiff to load the Explorer Express lift well behind the lift's "load here" line while the lift was at a complete stop.

21. Defendant Frame failed to monitor, observe, and/or assist Plaintiff with securing himself and his sit ski on the Explorer Express chair lift.

22. Defendant Frame's failure to monitor, observe, and/or assist Plaintiff with securing himself and his sit ski on the Explorer Express chair lift is a violation of the Passenger Tramway Safety Act.

23. Loading guests in this location is improper.

24. Loading guests in this location is a violation of Winter Park's policies and procedures.

25. Loading guests in this location is dangerous.

26. Upon information and belief, Winter Park's policies and procedures specifically require lift operators to load guests at the "load here" line.

27. Defendant Frame restarted the lift and Plaintiff was seated in the middle of the bull wheel area.

28. Plaintiff was moved sideways and then forward through the bull wheel area of the lift toward the "load here" loading line of the lift.

29. Specifically, Plaintiff and his sit ski equipment rode the chair around the bull wheel area before entering the loading area

30. When Plaintiff reached the "load here" loading line of the lift, Defendant Frame allowed three other guests to load Plaintiff's chair with Plaintiff.

31. Plaintiff and his ski equipment were not properly secured to the chair due to Defendant Frame improperly loading him well before the "load here" loading line.

32. As Plaintiff's chair ascended and passed the Explorer Express lift's first tower, Plaintiff fell from the chair as a result of being improperly loaded, causing severe injuries.

33. Defendant Frame failed to appropriately respond to unusual occurrences or conditions, including assisting Plaintiff, or slowing or stopping the Explorer Express lift.

34. Defendant Frame's failure to appropriately respond to unusual occurrences or conditions, including assisting Plaintiff, or slowing or stopping the Explorer Express lift, was dangerous and violated the Passenger Tramway Safety Act.

35. As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered and continues to suffer serious injuries, damages, and losses.

36. All of Plaintiff's injuries, damages, and losses are in the past, present, and future, whether so specifically delineated in each paragraph or not.

## FIRST CLAIM FOR RELIEF
### Negligence - Defendant Frame

37. Plaintiff incorporates by reference the allegations stated above as though restated and re-alleged herein.

38. Defendant Frame had a duty to exercise the highest degree of care commensurate with the operation of a ski lift while operating the Explorer Express ski lift on March 17, 2023.

39. Defendant Frame breached her duty of care when she improperly loaded Plaintiff well behind the loading area on the Explorer Express lift.

40. Defendant Frame's negligent acts and omissions were the direct and proximate cause of Plaintiff's injuries, damages, and losses.

41. Plaintiff suffered and continues to suffer serious injuries, damages, and losses as a result of Defendant Frame's negligence.

42. All of Plaintiff's damages are in the past, present and future whether so specifically delineated in each paragraph or not.

## SECOND CLAIM FOR RELIEF
### Negligence *(Respondeat Superior)* – Defendant Intrawest

43. Plaintiff incorporates by reference the allegations stated above as though restated and re-alleged herein.

44. Defendant Frame acted negligently and recklessly when she improperly loaded Plaintiff well behind the loading area on the Explorer Express lift.

45. Defendant Frame was at all relevant times an employee of Defendant Intrawest on March 17, 2023.

46. Defendant Frame was acting within the scope of her employment and authority at the time of the March 17, 2023 incident that injured Plaintiff.

47. The acts and omissions of Defendant Frame are the acts and omissions of Defendant Intrawest, and Defendant Intrawest is liable under the doctrine of Respondeat Superior.

48. The acts and omissions of Defendant Frame, which are the acts and omissions of Defendant Intrawest, caused injuries, damages, and losses to Plaintiff.

49. Plaintiff suffered and continues to suffer serious injuries, damages, and losses as a result of Defendants' negligence.

## THIRD CLAIM FOR RELIEF
### Negligence *Per Se* – All Defendants

50. Plaintiff incorporates by reference the allegations stated above as though restated and re-alleged herein.

51. C.R.S. § 33-44-104(2) states that "A violation by a ski area operator of . . . any rule promulgated by the passenger tramway safety board pursuant to section 12-150-105(1)(a) shall, to the extent such violation causes injury to any person . . . constitute negligence on the part of such operator."

52. American National Standards Institute revision B77.1-2017 Rule 3.3.2.3.1(a), which is incorporated by reference into the Passenger Tramway Safety Board's Rules and Act, states that "The duties of the individual designated as supervisor include:

    > a) to oversee practices that will determine that the aerial lift is operational and that all operating personnel are trained, equipped, and capable of performing their duties; prior to public use of the aerial lift;"

53. Rule 3.3.2.3.1(a), which was adopted for the public's safety, required Intrawest to oversee practices that would determine that the Explorer Express lift was operational and that all operating personnel were trained, equipped, and capable of performing their duties, prior to the public use of the Explorer Express lift.

54. Defendant Intrawest violated Rule 3.3.2.3.1(a) by failing to properly train employees assigned to the Explorer Express lift, including and in particular Defendant Frame, to perform the duties of that rule.

5

55. Defendant Intrawest violated Rule 3.3.2.3.1(a) by failing to oversee practices that would determine that the Explorer Express was operational and that all operating personnel, including and in particular Defendant Frame, were trained, equipped, and capable of performing their duties prior to the public use of the Explorer Express lift.

56. American National Standards Institute revision B77.1-2017 Rule 3.3.2.3.1(b), which was adopted for the public's safety and is incorporated by reference into the Passenger Tramway Safety Board's Rules and Act, states that "The duties of the individual designated as supervisor include:

    b) to discontinue operations on any aerial lift due to physical, weather, personnel, or other reasons;"

57. Rule 3.3.2.3.1(b) required Defendants to discontinue operation of the Explorer Express lift if sufficient personnel were not present to safely operate the chairlift.

58. Defendants violated Rule 3.3.2.3.1(b) by failing to provide sufficient personnel for the safe operation of the Explorer Express lift at the time Plaintiff arrived at the load line for that chairlift.

59. American National Standards Institute revision B77.1-2017 Rule 3.3.2.3.1(c), which is incorporated by reference into the Passenger Tramway Safety Board's Rules and Act, states that "The duties of the individual designated as supervisor include:

    c) to oversee operational procedures and adherence to applicable regulations pertaining to the aerial lift."

60. Rule 3.3.2.3.1(c), which was adopted for the public's safety, required Defendants to oversee operational procedures and adherence to applicable regulations pertaining to the Explorer Express lift.

61. Defendants violated this rule by failing to oversee operational procedures and adherence to applicable regulations pertaining to the Explorer Express lift.

62. American National Standards Institute revision B77.1-2017 Rule 3.3.2.3.3(b), which is incorporated by reference into the Passenger Tramway Safety Board's Rules and Act, states that "The duties of an attendant include:

    b) to monitor the passengers' use of the aerial lift; including observing, advising and assisting them while they are in the attendant's work area as they embark on or disembark from the aerial lift; and to respond to unusual occurrences or conditions,

as noted. The attendant should respond by choosing an appropriate action, which may include any of the following;

1. assisting the passenger;
2. slowing the aerial lift (if applicable);
3. stopping the aerial lift;
4. continuing operation and observation"

63. American National Standards Institute revision B77.1-2017 Rule 3.3.2.3.3(b), which was adopted for the public's safety, required Defendants to observe and monitor passengers' use of the Explorer Express lift, to advise and assist passengers while they were in Defendant Frame's work area, and to appropriately respond to unusual occurrences or conditions, including assisting the passenger, or slowing or stopping the lift.

64. Defendants violated Rule 3.3.2.3.3(b) by failing to properly advise and assist Plaintiff while loading him, by failing to observe and monitor his condition as he progressed through the Explorer Express lift, and by failing to appropriately respond to unusual occurrences or conditions, including assisting Plaintiff, or slowing or stopping the Explorer Express lift.

65. American National Standards Institute revision B77.1-2017 Rules 3.3.2.3.1(a), 3.3.2.3.1(b), 3.3.2.3.1(c), and 3.3.2.3.3(b); and C.R.S. § 33-44-104(2) were adopted for the public's safety and to protect against the types of injuries suffered by Plaintiff.

66. Defendants' violations of American National Standards Institute revision B77.1-2017 Rules 3.3.2.3.1(a), 3.3.2.3.1(b), 3.3.2.3.1(c), and 3.3.2.3.3(b); and their violation C.R.S. § 33-44-104(2) constitute negligence.

67. Defendants' violations of American National Standards Institute revision B77.1-2017 Rules 3.3.2.3.1(a), 3.3.2.3.1(b), 3.3.2.3.1(c), and 3.3.2.3.3(b); and their violation C.R.S. § 33-44-104(2) were the direct and proximate causes of Plaintiff's injuries, damages, and losses.

**FOURTH CLAIM FOR RELIEF**
**Negligent Supervision/Training- Defendant Intrawest**

68. Plaintiff incorporates by reference the allegations stated above as though restated and re-alleged herein.

69. Defendant Frame was an employee and agent of Defendant Intrawest at all times pertinent to the March 17, 2023 incident.

70. Defendant Frame was the only employee present and was solely operating the loading area of the Explorer Express lift on March 17, 2023 at the time Plaintiff was loading the lift.

71. Defendant Intrawest negligently supervised Defendant Frame and permitted Defendant Frame to load the chair lift with incorrect and/or incomplete instruction regarding the loading and unloading of the chair lift and the loading of adaptive skiers.

72. Defendant Intrawest is responsible for the training and supervision of its employees.

73. Defendant Intrawest had control of the chair lift at the time of the March 17, 2023 incident.

74. Defendant Intrawest did not properly train and/or supervise Defendant Frame, which caused Plaintiff's injuries, damages, and losses in the March 17, 2023 incident.

75. Defendant Intrawest's negligent supervision and training of Defendant Frame was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

## FIFTH CLAIM FOR RELIEF
### Gross Negligence – All Defendants

76. Plaintiff incorporates by reference the allegations stated above as though restated and re-alleged herein.

77. Defendants owed Plaintiff a duty of care to safely operate and maintain the Explorer Express Lift, to properly instruct guests to load the lift, and to train and supervise their employees in the safe operation and loading of guests on the Explorer Express Lift.

78. Defendants consciously and recklessly disregarded Plaintiff's safety, and engaged in willful and wanton conduct by:

    a. Improperly instructing and loading Plaintiff on the Explorer Express Lift in the bull wheel area well behind the loading area and "load here" line, when Defendants knew that doing so was dangerous and could likely result in serious injury or death;

    b. Consciously deciding not to stop the Explorer Express Lift when Plaintiff was not properly loaded onto the lift when Defendants knew that doing so was dangerous and would likely result in serious injury or death;

    c. Failing to properly train and supervise Defendants' lift operator regarding loading adaptive skiers, particularly regarding the proper loading area for adaptive skiers, when Defendants knew that failing to do so was dangerous and would likely result in serious injury or death.

79. Defendants knew their conduct was dangerous, heedless, and reckless, and without regard to the consequences or the rights and safety of others, particularly Plaintiff, and would likely cause injury to Plaintiff.

80. Defendants' gross negligence was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

## SIXTH CLAIM FOR RELIEF
**Extreme and Outrageous Conduct - Defendant Intrawest**

81. Plaintiff incorporates by reference the allegations stated above as though restated and re-alleged herein.

82. Defendant Intrawest engaged in extreme and outrageous conduct when it failed to properly train their employees, including and in particular Defendant Frame, which resulted in Plaintiff being improperly and dangerously loaded before the load line, causing a catastrophic fall that seriously injured Plaintiff.

83. Defendant Intrawest's extreme and outrageous conduct was reckless and caused Plaintiff damages, including severe emotional distress.

84. Defendant Intrawest's extreme and outrageous conduct is the direct and proximate cause of Plaintiff's injuries, damages, and losses, including severe emotional distress.

## ALTERNATIVE CLAIM FOR RELIEF
**Premises Liability- Defendant Alterra Mountain Company**

85. Plaintiff incorporates by reference the allegations stated above as though restated and re-alleged herein.

86. Defendant Alterra Mountain Company is a landowner of the property where the incident occurred pursuant to C.R.S. § 13-21-115(7)(b).

87. At all relevant times, Plaintiff was an Invitee pursuant to C.R.S. § 13-21-115(7)(a).

88. Defendant Alterra Mountain Company unreasonably failed to exercise reasonable care to protect against dangers of which it knew or should have known at the Property.

89. Plaintiff suffered and continues to suffer injuries, damages, and losses as a result of Defendant Alterra Mountain Companie's failure to exercise reasonable care with respect to a danger at the Property of which it knew or should have known.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment in favor of Plaintiff and against Defendants in an amount that would fully compensate him for all of his economic and non-economic losses, including but not limited to, pain, suffering, discomfort, impairment, disfigurement, loss of enjoyment of life, mental distress, past and future medical expenses, past and future lost wages, and other incidental and consequential expenses.  Plaintiff also requests pre- and post-judgment interest, costs, and such other and further relief as the Court deems appropriate. All damages requested are for past, present, and future damages.  PLAINTIFF PRESERVES THE RIGHT TO REQUEST EXEMPLARY DAMAGES PURSUANT TO C.R.S § 13-21-203.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted this 2nd day of January, 2025.

**BLOCH & CHAPLEAU,
CATES, ONGERT, LLC**

*/s/ Trenton J. Ongert*

_____
Joseph D. Bloch, #16783
Trenton J. Ongert, #36602
Attorneys for Plaintiff
1725 Gaylord Street
Denver, CO 80206
Ph:  (303) 331-1700
Fax: (303) 355-0252
jbloch@blochchapleau.com
tongert@blochchapleau.com

Plaintiff' Address:
1322 Delmont Court
San Antonio, TX 78258